**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| United States of America, Plaintiff, v. Eloy Fuentes (51409-424), Defendant-Movant. | ) ) ) ) ) ) ) ) ) ) | No. 21 C 6381 (No. 16 CR 463-19) Hon. Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Eloy Fuentes is serving a 140-month sentence for his 2020 racketeering conspiracy conviction in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. *United States v. Fuentes*, No. 16 CR 463-19 (N.D. Ill.) (Kendall, J.). Pending before this Court is Fuentes' motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Dkt. 1.) He alleges two grounds of ineffective assistance of trial counsel, and requests that his sentence be vacated and that he receives a resentencing. For the reasons discussed below, his § 2255 motion is denied and the Court declines to issue a certificate of appealability.

**BACKGROUND**

For fourteen years, Fuentes was involved with the Almighty Latin Kings Nation—a violent street gang that perpetuates crime and violence throughout the South Side of Chicago and its adjoining suburbs. (CR Dkt.[1] 593, Superseding Indictment, p. 2-6; CR Dkt. 1999, Presentence Investigation R., p. 9.) The gang is organized into different chapters and operates under a hierarchal, rank structure with each chapter conducting its affairs pursuant to the laws and codes of conduct set forth in the Latin Kings' constitution and manifesto. (CR Dkt. 593, p. 3-5, 16.)

[1] The Court denotes Fuentes' criminal case record, *United States v. Fuentes*, 16 CR 463-19 (N.D. Ill.), with "CR," followed by the applicable docket item number.

Fuentes became affiliated with the Latin Kings as a teenager. (CR Dkt. 1999, p. 9.) He began associating with Latin Kings' members in the Cicero, Illinois area at age 13, and he became a member of the gang in 2002 when he was 17 years old. *Id.* In 2009, he joined the gang's South Bend, Indiana chapter as a soldier. *Id.* Over the next several years, he would continue to work his way up through the ranks and hold different leadership positions. *Id.* In each of his roles, Fuentes was aware that violence, including murder, was part of carrying out the gang's affairs to maintain the gang's reputation and protect its territory. *Id.* at 11-12. As a soldier, Fuentes was required to participate in "hood days," during which he and other gang members stood watch, armed with guns, to protect Latin Kings' territory from rival gangs. *Id.* at 10. When he moved up in rank to Enforcer, he became responsible for providing guns to the soldiers during hood days. *Id.*

In 2012, Fuentes was promoted to the role of Chapter Inca within the 104th Street chapter. *Id.* at 9, 12. As Inca, Fuentes oversaw the operations and activities of the chapter, and was accountable to regional leadership. *Id.* at 10; (CR Dkt. 1327, Plea Decl., p. 2.) His responsibilities included holding chapter meetings, enforcing the gang's rules, ordering violations of non-compliant members,[2] safeguarding the chapter's gun supply, and ordering attacks on rival gang members. (CR Dkt. 1999, p. 10.) Fuentes maintained his leadership position with the Latin Kings until his arrest in 2016. *Id.* at 9.

On February 1, 2018, Fuentes was charged by superseding indictment with a RICO conspiracy in violation of 18 U.S.C. § 1962(d) (Count One). (CR Dkt. 593.) On November 20, 2018, Fuentes entered a "blind" guilty plea to Count One of the superseding indictment pursuant to a written plea declaration. (CR Dkt. 1327.) In his plea declaration, Fuentes asserted that he was, "in fact, guilty of the charge contained in Count One" in that he "knowingly conspired to conduct

[2] "Violations" were part of the Latin Kings' internal disciplinary system and involved attempting to murder, conspiring to murder, and physically beating, extorting, and threatening non-compliant gang members. (CR Dkt. 593, p. 16-17.)

and participate in the conduct of the affairs of the Latin Kings through a pattern of racketeering activity" in violation of § 1962(d) from 2009 to 2016. *Id.* at 1-2. He admitted that:

> As a member of the South Bend, Indiana chapter and later as the Inca of the 104th Street chapter, I agreed and knew that a co-conspirator, another member of the Latin Kings, would commit at least two acts of racketeering activity, including murders, arsons, and robberies, in the conduct of the affairs of the Latin Kings street gang.

*Id.* at 3.

His plea declaration also included a discussion regarding his understanding of the statutory maximum penalties he faced, as well as the applicable Sentencing Guidelines. *Id*. Fuentes acknowledged that a violation of § 1962(d) carried a statutory maximum sentence of 20 years' imprisonment. *Id.*; *see* 18 U.S.C. § 1963(a). With respect to the Sentencing Guidelines, he understood the base offense level for his RICO violation was 19 or the offense level applicable the underlying racketeering activity. (CR Dkt. 1327, p. 3); *see* U.S.S.G. § 2E1.1(a)(2)). He further recognized it was the Government's position that the underlying racketeering activity in his case was conspiracy to commit murder—which amounted to a base offense level of 33 under U.S.S.G. § 2A1.5(a). (CR Dkt. 1327, p. 3.)

At his plea colloquy, Fuentes did not contest the contents of his plea declaration. (CR Dkt. 2511, Tr. of 11/20/2018 Hr'g.) He affirmed under oath that he had reviewed the plea declaration, had enough time to consider its implications, and understood the differences between the maximum statutory penalties and the Sentencing Guidelines. *Id.* at 6-10. Following the Government's explanation of its position as to the preliminary sentencing range, Fuentes' attorney advised the Court that they were not contesting that the applicable base offense level was 33 under § 2A1.5(a). *Id.* at 12. Fuentes confirmed his understanding of the preliminary sentencing calculation and formally entered his guilty plea as to Count One. *Id.* at 12, 17-18.

Prior to sentencing, the U.S. Probation Department prepared a presentence investigation report ("PSR"). (CR Dkt. 1999.) The Probation Department recommended a base offense level of 33 pursuant to U.S.S.G. §§ 2E1.1(a)(2) and 2A1.5(a), concluding that Fuentes, "[a]s part of the racketeering conspiracy, [] conspired with his codefendants, in furtherance of their jointly undertaken activity to commit murder." *Id.* at 11-12. Based on his various positions in the gang, the PSR found that there was sufficient information to conclude that conspiracy to commit murder was reasonably foreseeable to Fuentes. *Id.* The PSR increased the base offense level by three points for Fuentes' aggravating role as "manager or supervisor" of his local chapter and subtracted three points for Fuentes' acceptance of responsibility, bringing the total offense level to 33. *Id.* at 12-13. Combined with his Category III criminal history, the PSR calculated a sentencing range of 168 to 210 months. *Id.* at 29.

In his sentencing memorandum, Fuentes did not object to the calculation of his total offense level in the PSR, agreeing that 33 was correct. (CR Dkt. 2335, Eloy Fuentes' Sentencing Mem., p. 2.) He took full responsibility for his role as Inca, and once again acknowledged his involvement in carrying out the affairs of the Latin Kings, including participating in meetings where violent conflict was planned and gang members were violated, as well as his involvement in obtaining guns for the gang with full knowledge as to the purpose for which they would be used. *Id.* at 1.

Fuentes' sentencing hearing was held on November 19, 2020. (CR Dkt. 2517, Tr. of 11/19/2020 Hr'g.) Consistent with his sentencing memorandum, Fuentes' attorney did not challenge the offense level calculation; rather, he argued in favor of certain mitigating factors, including Fuentes' limited criminal history and the lack of any specific evidence regarding his involvement in discrete acts of gang violence. *Id.* at 6, 11-16. The Government conceded there was no evidence of Fuentes carrying out or ordering violence, but argued that given his 14-year tenure

and leadership role in the gang, it was evident that Fuentes was involved in carrying out the violent objectives of the Latin Kings, including murder. *Id*. at 9-11. Following the parties' arguments, the Court imposed a sentence below the guidelines range of 140 months' imprisonment. *Id.* at 23-26. Fuentes did not appeal his conviction or sentence.

Fuentes now brings a § 2255 motion challenging his sentence on grounds of ineffective assistance of counsel. In Claim One, Fuentes argues his counsel was in effective at the sentencing hearing in failing to object to the application of § 2A1.5 as his base offense level. (Dkt. 3, p. 4-11.) In Claim Two, he contends counsel was ineffective in failing to contest the applicable statute and maximum sentence for his offense. *Id.* at 11-12. Both of his claims are without merit.

## LEGAL STANDARD

Section 2255 provides a remedy for federal prisoners who can establish that their sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law…" 28 U.S.C. § 2255(a). "Relief under § 2255 is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (internal quotations and citations omitted). Generally, claims not raised on direct appeal are procedurally defaulted and precluded from collateral review absent a showing of cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Claims of ineffective assistance of counsel, however, are an exception to the procedural-default rule and may be brought in the first instance in a § 2255 motion. *Id.* at 505-06; *United States v. Moody*, 770 F.3d 577, 582 & n.13 (7th Cir. 2014) (collecting cases). Unless Fuentes' "alleges facts that, if proven,

would entitle him to relief," the Court need not grant him an evidentiary hearing on his claims. *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (internal quotations and citations omitted).

## ANALYSIS

The two prong-test established in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance claims and applies to challenges to counsel's effectiveness during the plea process and at sentencing. *See Resnick v. United States*, 7 F.4th 611, 619, 625 (7th Cir. 2021) (citations omitted). To prevail on his claims, Fuentes must show: (1) deficient performance, meaning "counsel's representation fell below an objective standard of reasonableness," and (2) prejudice. *Strickland*, 466 U.S. at 687-88.

On the performance prong, Fuentes "must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). As for the prejudice prong, Fuentes must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the sentencing context, prejudice is satisfied where it is established that "'but for counsel's errors, there is a reasonable probability that he would have received a different sentence.'" *Resnick*, 7 F.4th at 625 (quoting *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010)). Whereas in the plea context, prejudice is met where "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial.'" *Wyatt*, 574 F.3d at 458 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

### 1. Claim One: Ineffective Assistance in Failing to Object to Application of § 2A1.5

For his first claim, Fuentes contends that his counsel was ineffective in failing to object to the application of § 2A1.5 as his base offense level because there was no determination as to

whether conspiracy to commit murder was within the scope of the jointly undertaken criminal activity pursuant to § 1B1.3(a)(1)(B). (Dkt. 3, p. 4-11.) The Government correctly argues that Fuentes cannot prevail on this claim.

For a defendant to be held accountable for the acts of others at sentencing, the conduct must be "(i) within the scope of… (ii) in furtherance of…, and (iii) reasonably foreseeable in connection with…" the jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(B) & cmt. n.3(A). Fuentes argues that in adopting the findings of the PSR, the Court only made a determination as to the second element ("[a]s part of the racketeering conspiracy, the defendant conspired with his codefendants, in furtherance of their jointly undertaken activity, to commit murder") and the third element ("there is sufficient information to conclude that conspiracy to commit murder was reasonably foreseeable to the defendant") with respect to the foregoing analysis. (Dkt. 3, p. 4-8.) He contends that his attorney should have objected and requested a finding as to all three criteria because, in the absence of direct evidence of his involvement in the violence, the enhancement for conspiracy to commit murder under § 2A1.5 would not have been applicable, and his base offense level would have been 19 as opposed to 33. *Id.* at 8-11.

The Seventh Circuit, however, has rejected this type of challenge to the application of the guideline for conspiracy to commit murder and affirmed attributing such conduct to defendants in leadership positions of the Latin Kings without proof of their physical participation. *See United States v. Porraz*, 943 F.3d 1099, 1102-04 (7th Cir. 2019); *United States v. Garcia*, 754 F.3d 460, 484-85 (7th Cir. 2014). As explained in *Porraz*, "overt acts *personally committed* by a defendant do not establish the most serious underlying racketeering activity attributable to him." 943 F.3d at 1103 (emphasis in original). And where "the Latin Kings' constitution and the rules of [the] chapter expressly contemplated violence, including homicide, and [] his duties as an Inca included

protecting the chapter's territory with violence, if necessary…, [i]t [did] not matter that there was no evidence that [defendant] pulled a trigger." *Id.* (citing *Garcia*, 754 F.3d at 485). Attributing violent conduct, such as murder, to leaders of the Latin Kings without evidence of their physical participation is not only "consistent with the law of conspiracy, but it also avoids the perverse outcome of a gang leader's avoiding responsibility for the acts of a gang member lower in the hierarchy, when that act was committed on behalf of, and subject to the enforcement of, the gang's leadership." *United States v. Hernandez,* No. 20 C 6414, 2022 WL 461988, at *3 & n.2 (N.D. Ill. Feb. 14, 2022).

Thus, an objection to the application of § 2A1.5 on the basis that there lacked direct evidence of Fuentes' participation in the violent affairs of the Latin Kings would have been futile. As a result, Fuentes' attorney was not ineffective in failing to raise a meritless argument. *Faucett v. United States*, 872 F.3d 506, 512 (7th Cir. 2017) ("Refraining from a meritless sentencing argument cannot be characterized as objectively unreasonable.").

Nor can Fuentes demonstrate prejudice, as his own admissions otherwise satisfy § 1B1.3(a)(1)(B)'s criteria and merit the application § 2A1.5 for the underlying offense of conspiracy to commit murder. Fuentes admitted to having been an active participant in the Latin Kings as both a soldier and Inca. (CR Dkt. 1327, p. 1-3.) He knew that murder was part of carrying out the conduct of the Latin Kings' affairs. *Id.* at 3. He acknowledged that he participated in meetings where violent conflict against rival gangs was planned. *Id.* at 2; (CR Dkt. 2335, p. 1.) And he knew the purpose for which the guns he was supplying to the gang were being used. (CR. Dkt. 2335, p. 1.) Conspiracy to commit murder was thus implicit in the operation of the Latin Kings' agenda, which Fuentes agreed to abide by as soldier and oversaw as Inca. *See* U.S.S.G. § 1B1.3 cmt. n.3(B) (to determine scope, "the court may consider any explicit or implicit

agreement fairly inferred from the conduct of the defendant and others"). He therefore cannot show that, absent his counsel's failure to object, his sentence would have been different. *See Hernandez,* 2022 WL 461988, at *3, *4 (rejecting movant's ineffective assistance claim for failing to object to base offense level of 33 at sentencing where movant admitted that he "knowingly conspired to conduct and participate in the conduct of the affairs of the Latin Kings…, including murder").

Accordingly, Fuentes cannot establish deficient performance or prejudice on this claim. Claim One is therefore denied.

**2. Claim Two: Ineffective Assistance for Failing to Contest the Applicable Statutory Maximum Sentence for His Offense**

As for Claim Two, Fuentes contends his counsel provided ineffective assistance by failing to argue that he was neither charged nor convicted of the proper offense for his crime. (Dkt. 3, p. 11-12.) He contends that he should have been charged with conspiracy to commit murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(5), a crime that carries a statutory maximum sentence of 10 years' imprisonment. *Id.* The Government correctly argues that this claim lacks merit.

Fuentes was never charged with a violation of § 1959(a)(5). He was charged only with one count of RICO conspiracy in violation of § 1962(d). (CR Dkt. 593.) He was advised of the charge against him, understood the maximum penalty for this charge was 20 years' imprisonment, and confirmed his awareness of the maximum sentence in both his plea declaration and plea colloquy. (CR Dkt. 1327, p. 3; CR Dkt. 2511, p. 8.) He further acknowledged that he understood the difference between statutory maximum penalties and the Sentencing Guidelines for his RICO violation. (CR Dkt. 1327, p. 3; CR Dkt. 2511, p. 6-7, 11-12.) Finally, the Court imposed a sentence in accordance with the statutory range. (CR Dkt. 2517, p. 26.)

Fuentes does not contest this factual backdrop. He concedes that he pleaded guilty to violating § 1962(d) and that counsel advised him that the offense carried a maximum prison sentence of 20 years. (Dkt. 11, p. 2.) He argues, however, that counsel told him his sentence would depend on the "elements of the offense for which he…pleaded guilty," and contends the proper offense in his case should have been a violation of 18 U.S.C. § 1959(a)(5). *Id.* at 2, 6.

To the extent Fuentes is arguing that he was ill advised as to the sentencing consequences of pleading guilty to a violation of § 1962(d), the record and the concessions he makes in his reply brief rebut this claim. Fuentes does not dispute that he was aware of the charge to which he was pleading guilty, nor the statutory maximum sentence that could be imposed. Any potential arguments to the contrary are refuted by his statements in his plea declaration and plea colloquy. And even assuming, for the sake of argument, Fuentes was incorrectly advised by counsel, the Court corrected any such error during its explanation of the maximum penalties at Fuentes' plea colloquy. *See Thompson v. United States*, 732 F.3d 826, 831 (7th Cir. 2015) ("[T]he district court's explanation of the sentencing process at [defendant's] plea colloquy removed any possible prejudice of [counsel's] advice.").

If instead Fuentes is arguing his counsel was ineffective because he should have advocated for a plea agreement commensurate with sentencing under § 1959(a)(5), his argument is unavailing. "[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel," including "the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000) (citing *United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993) ("Prosecutors need not offer discounts and may withdraw their offers on whim. Defendants have no substantive right to bargain-basement sentences.")).

Fuentes provides no indication that the Government was willing to discuss, much less accept, a plea agreement to a violation of § 1959(a)(5). *See id.* And his conclusory claim that counsel should have objected and suggested an alternative charge that carried a shorter maximum sentence does not suffice to establish his counsel's performance was constitutionally inadequate. *Martin*, 789 F.3d at 707 ("[R]equiring the district court to reopen a petitioner's case…sensibly requires *some* threshold showing of the evidentiary basis, beyond mere conclusory allegations, that supports a finding that the government in fact offered a plea deal.") (emphasis in original).

Beyond his inability to prove his attorney's conduct was deficient, Fuentes' claim fails on the prejudice prong because he cannot show that his attorney's failure to object to his sentencing exposure under § 1962(d), as opposed to § 1959(a)(5), was a "decisive factor" in his decision to forego trial and plead guilty. *Thompson*, 732 F.3d at 830-31 (citations omitted). As noted above, such an argument is contrary to the statements he made under oath at his plea colloquy, and the Court's discussion of the significance of his guilty plea and the sentencing process "removed any possible prejudice" as to counsel's alleged failings. *Id.* at 831. And "[w]hether he could have negotiated a better plea deal" for an offense that carried a lower statutory maximum is "irrelevant to the issue of prejudice in the ineffective assistance context." *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006). Fuentes therefore cannot prevail on Claim Two.

For the reasons discussed above, Fuentes is not entitled to relief on either of his ineffective assistance claims. The Court therefore denies his § 2255 motion.

**3. Certificate of Appealability and Notice of Appeal Rights**

Fuentes is advised that this is a final decision ending his case in this Court. If Fuentes wishes to appeal, he must file a notice of appeal with this Court within 60 days of the entry of judgment. See Fed. R. App. P. 4(a)(1)(B). Fuentes need not bring a motion to reconsider this

Court's ruling to preserve his appellate rights. However, if Fuentes wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. See Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. See Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. See Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. See Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. See Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. See Fed. R. App. P. 4(a)(4)(A)(vi).

The Court declines to issue a certificate of appealability. Such a certificate "may not issue unless the applicant has made a substantial showing of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (internal quotations and citation omitted). Fuentes must show that reasonable jurists could debate whether this Court should have resolved his claims differently or that the issues are "adequate to deserve encouragement to proceed further." *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing *Slack*, 529 U.S. at 484) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). He cannot meet this standard.

## CONCLUSION

Fuentes' § 2255 motion (Dkt. 1.) is denied on the merits. Any other pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk shall enter a Rule 58 judgment in favor of Plaintiff and against Defendant-Movant. Civil Case Terminated.

ENTERED:

Dated: 6/27/2022

VIRGINIA M. KENDALL
United States District Judge